GEORGE W. WRIGHT, et al., Appellant, v. EISELE, et al., Respondents.

(185 N. W. 966.)

(File No. 4929. Opinion filed December 20, 1921.)

1. **Brokers—Realty Sale, Procuring Enforceable Written Contract, or Ready, Able, Willing Purchaser, as Conditions, Waiver of Presentation, How Effected.**

The rule is well settled in this state that, to accomplish purposes of an agency for a realty sale, agent must either procure from purchaser an executed valid written contract enforceable by principal in accordance with conditions prescribed by him, and present same to him for execution; or must obtain and present to him a purchaser ready, able and willing to purchase on terms and conditions on which agent was authorized to sell. Such presentation might be waived if principal should refuse to sell after purchaser had been so found and principal notified.

2. **Same—Listing for Sale at Specified Price and Terms, Agent's Negotiations or Sale to Undisclosed Purchaser, Subsequent Futile Efforts to Buy the Land—Whether Commission Recoverable on Theory of Undisclosed Purchaser.**

A land owner listed to plaintiffs as realty agents a tract of land at a specified price per acre subject to a specified mortgage, and plaintiffs thereafter advised defendants they had a purchaser, but not disclosing his name and asking for abstracts of title for examination; defendants demanding a contract and earnest money; plaintiffs thereupon writing defendants that "our party" insisted on seeing abstracts before putting up money, and that he was able, etc., but that they, plaintiffs, were "willing to try and go through with this deal," and asking amount of ernest money required for a deed to them, that it would be necessary for them to contract with defendants and to advance ernest money; defendants then requesting an executed contract from plaintiffs with specified ernest money, when the contract would be signed and returned and abstracts furnished; plaintiffs forwarding a contract with the specified ernest money, defendants making certain changes therein and returning it to plaintiffs for approval but without returning the ernest money, a further modified contract being later sub-

mitted by plaintiffs; some of the abstracts meanwhile having been examined and found defective; defendants offering to guarantee correction of alleged defects and offering to close deal upon receiving a specified advance payment, plaintiffs making a counter-proposition for a smaller payment, and declaring they were ready and able to put deal through but "we want to be able to have our party tied up;" nothing coming from these negotiatings, defendants signing no contract. Plaintiffs had contracted with one W to sell the land to him at an advanced price with ernest money payment, which latter was never made. In a suit by plaintiffs to recover the ernest money paid by them to defendants, and a commission for the difference between said list price and what W was to pay, **held**, that plaintiffs' contention that they entered into a written contract with W as defendant's agents, **their undisclosed principals**, and that their principals could enforce the contract against W., was untenable; the record disclosing that the proposed contract between plaintiffs and defendants, and the one actually made between plaintiffs and W, were understood by both plaintiffs and defendants to be independent contracts, and that the listing contract was abandoned by plaintiffs. So **held**, one of plaintiffs testifying that "we exepcted to deliver the land to Mr. Webb, but according to the terms of our own individual contract, and not according to any contract we entered into with defendants;" hence the rules of law governing rights of parties under contract made by an agent on behalf of an undisclosed principal, are inapplicable here.

Appeal from Circuit Court, Faulk County. Hon. JOSEPH H. BOTTUM, judge.

Action by George W. Wright, and J. W. Keiser, against J. F. Eisele, and C. O. Bowers and others, to recover certain ernest money paid by plaintiffs on an alleged purchase of land from defendants, and a commission on an alleged sale by them to a third party for a higher price than that listed to them as agents. From a judgment for defendants, and from an order denying a new trial, plaintiffs appeal. Affirmed.

*Chas. E. Warren,* and *Chamberlain & Hall,* for Appellants.

*Jacobs & Byrne,* and *Boyd & Boyd,* for Respondents.

(2) To point two, Appellant cited: Mitchell v. Knudson Land Co., 19 N. D. 736, 124 N. W. 946; Davidson v. Hurty, 116 Minn. 280, 133 N. W. 862; Obenauer v. Solomon (Mich.,) 115 N. W. 696.

SMITH, J. Defendants were owners of an improved farm or ranch, comprising about 4,100 acres of land, in Faulk county.

Plaintiffs were land dealers or brokers at Huron. About March
1, 1919, defendants, by written contract listed this land with plain-
tiffs for sale at a net price to them of $27.50 per acre, "sale to be
made on a cash basis subject to a mortgage now on the land of
forty-two thousand dollars ($42,000), final settlement to be made
as soon as merchantable title is furnished, unless otherwise terms
are mutually agreed upon." Thereafter plaintiffs advised de-
fendants that they had a purchaser for the land. They did not,
at any time, disclose to defendants the proposed purchaser's name
or place of residence, but asked that abstracts of title be sent to
them for examination. Defendants advised that abstracts would
be sent when the contract of sale was signed up and earnest
money paid, which they had previously suggested might be about
$10,000. Thereafter, on May 12, 1919, plaintiffs wrote to de-
fendants that—

"Our party insists on seeing the abstracts before he puts up
any money on this deal. He is a good man, and plenty able to
buy and pay for the land. We are willing to try and go through
with this deal, so are writing you, asking you to suggest the
amount of money you would require down on a contract for a
deed with us, with final settlement to be made, and the balance
of the cash payment made, at the time you have presented us
with abstracts showing a good and merchantable title, and the same
has been approved by our client. It will be necessary for us to
enter into this contract with you. It will also be necessary for us
to advance the earnest money payment, so would suggest that
you make the earnest money payment small, so as to help us out
as much as possible in putting this deal through."

In reply defendants suggested that plaintiffs prepare, sign, and
send their proposed contract in duplicate, with $4,000 ernest
money, and one of the duplicates would be signed and returned,
and they would furnish abstracts which they were satisfied would
show good title. Plaintiff prepared and sent defendants a dupli-
cate contract of sale of the land to themselves, together with the
$4,000 ernest money. Defendants made certain changes and
alterations by written interlineations in one of the duplicates, and
signed and returned it to plaintiffs for their approval, but did not
return and never had returned the $4,000. Plaintiffs thereupon
redrafted and signed the contract, including therein certain of

the changes made by defendants in the duplicate, but adding certain other modifications, and sent this back to defendants for their approval.   In the meantime certain of the abstracts of title had been forwarded to and examined by plaintiffs' attorneys, and plaintiffs advised defendants that their attorneys had found defects in the title, which were pointed out, and asked that defendants take immediate legal proceedings to remedy such defects, which would necessarily take several months' time.

In response to this communication defendants offered to give a bond guaranteeing the correction of the alleged defects in the title, and to close the deal by a sufficient deed, upon receiving a cash payment of $25,000 on the purchase price, the balance to be paid upon the completion of the legal proceedings perfecting the record title.   Plaintiffs thereupon offered to accept this proposition, if defendants would reduce the cash payment to $11,000. Defendants had not signed or returned the amended contract last sent them, and, referring to this fact, plaintiffs wrote:

"We are ready and able to put this deal through, but of course we want to be able to have our party tied up.   This we have done on the suggestion of various letters from you, thus putting ourselves in a position where we must deliver this land. Now it seems to us as though we are entitled to some sort of a contract or agreement."

Nothing came of these negotiations, and no final contract of sale was ever signed by defendants.   Plaintiffs' first proposed contract of sale to themselves was sent to defendants on May 25, 1919.   On May 12, 1919, the plaintiffs had entered into a written contract with one Webb, contracting to sell this land to him at $32 per acre upon the following terms, namely:   $5,000 cash, the assumption by him of the $42,000 on the land, and the payment of $86,120 upon presentation of abstracts showing merchantable title in them and a good and sufficient deed from them. Webb never paid the $5,000 cash, or demanded a deed.   Plaintiffs began this action to recover the $4,000 ernest money paid by them, and claiming a commission of $18,720, the difference between the net list price of $27.50 per acre and the price of $32 per acre named in their abstract of sale to Webb.

At the trial, plaintiff Wright testified as follows:

"We entered into contract (Exhibit 44) agreeing to convey

for ourselves this land to Mr. Webb, with the expectation on our part of securing a contract from the defendants which would require them to convey the land to us, so that we might again reconvey to Webb. * * * We expected to advance the cash payment. * * * Myself and Mr. Keiser were acting as independent buyers, with the Webb contract as a basis. * * * We expected to deliver the land to Mr. Webb, *but according to the terms of our own individual contract, and not according to any contract we entered into with defendants.* * * * We were getting the land from the defendants on our own individual contract with them, and expected to convey to Webb after a conveyance to ourselves. * * * After the 12th of May, 1919, we were still negotiating with the defendant for the sale of this land directly to ourselves. No such contract has ever been consummated. After the 12th of May, 1919, we continued to make an effort to sell this land to other parties, and took different people out there and showed them the land. *In most cases we showed it as ours.* After the 12th day of May, we made arrangements to borrow money on it ourselves. We took a prospective loanant out there and showed him the land. * * * At that time (July 11, 1919) we were claiming to be the absolute owners of this land, and had an action pending in the circuit court of Faulk county, S. D., against the defendants, in which action we asked that the defendants be required to convey this land to myself and Mr. Keiser. * * * I might have made the statement, after the 12th day of May, that I did not expect to be able to sell the land until after harvest, and possibly not that year, and that I would have to carry it."

This witness also testified that they did not, at any time during the entire negotiations in reference to this matter, ever produce Mr. Webb as a purchaser to the defendant. The trial court made findings of fact to the effect that plaintiffs never found or produced to defendants a purchaser ready, able, and willing to purchase the land on the terms prescribed in the listing contract, and never obtained a binding contract for the sale of the land, which could be enforced by defendants, and denied the right to a commission, but awarded plaintiffs a judgment for the $4,000 ernest money paid to defendants, for which defendants offered judgment. Plaintiffs appeal from an order overruling the motion

for a new trial and the judgment so far as it denies recovery of the claimed commissions.

[1] The rule has been settled in this state by a number of decisions that, to accomplish the purpose of an agency for the sale of real estate, the agent must pursue one of two courses: He must procure from the purchaser an executed, valid contract in writing, enforceable by the principal, containing terms and conditions in accordance with those prescribed by the principal in listing the land, and present the same to the principal for execution; or he must obtain and present to his principal a purchaser then and there ready, able, and willing to purchase the land on the terms and conditions upon which the agent was authorized to sell. Watters v. Dancey, 23 S. D. 481, 122 N. W. 430, 139 Am. St. Rep. 1071. Such presentation might be waived, however, if the principal should refuse to sell after such purchaser had been found and the principal notified.

[2] The record shows conclusively that plaintiffs never disclosed to defendants the name or residence of Webb, and that he was an entire stranger to them. Plaintiffs' main contention on this appeal is that they entered into a written contract with Webb, as agents of defendants, *their undisclosed principals;* that their principals could enforce this contract against Webb, and therefore they have earned the commission to which they were entitled under the listing contract. The record, however, conclusively discloses that the proposed contract between plaintiffs and defendants and the contract actually entered into between plaintiffs and Webb were, and were understood by both plaintiffs and defendants to be, independent contracts, and that the listing contract was wholly abandoned by plaintiffs. This is clear from the plaintiffs' own testimony, and from the fact that plaintiffs brought an action in the circuit court of Faulk county to enforce an alleged contract of sale to themselves, which is wholly inconsistent with the claim that they were acting as agents of defendants in effecting a sale to Webb. Such an action however, was perfectly consistent with the theory that they deemed themselves purchasers of the land, and were seeking to obtain title in order to fulfill their contract with Webb, and thereby secure the large profits resulting from the enhanced price agreed to be paid by Webb. Certainly, upon such a state of facts, the rules of law which govern the rights

of parties under contracts made by an agent on behalf of an undisclosed principal, can have no application.

The order and judgment of trial court are amrmed.